UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 3:18-cr-01549-GPC |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO MODIFY SENTENCE** |
| JUAN LOPEZ-VALDEZ, | |
| Defendant. | **[ECF No. 191]** |

Before the Court is Defendant Juan Lopez-Valdez's Motion to Modify Sentence for immediate release pursuant to 18 U.S.C. § 3582(C)(1)(A)(1). ECF No. 191. The motion has been fully briefed. ECF Nos. 195, 197. Lopez-Valdez filed a supplemental brief on May 28, 2020. ECF No. 206. The Government filed an opposition. ECF No. 210. For the reasons that follow, Lopez-Valdez's motion is **DENIED**.

**I.   BACKGROUND**

Lopez-Valdez is a 56-year-old man who suffers from type II diabetes and hypertension. ECF No. 206 at 2, Ex. A; ECF No. 191 at 3. On February 27, 2020, Lopez-Valdez was convicted by guilty plea of one count of Conspiracy to Distribute Cocaine On Board a Vessel in violation of 46 U.S.C. §§ 70503 and 70506(B). ECF No.

1

188.  Lopez-Valdez was sentenced to a term of 78 months, followed by three years of supervised release.  *Id.*  At the time of his motion, Lopez-Valdez was serving his sentence at CoreCivic's Otay Mesa Detention Center in San Diego, CA ("Otay Mesa") as a United States Marshals Service ("USMS") detainee, *see* ECF No. 191 at 3, but he has since been transferred to North Lake Correctional Facility in Baldwin, Michigan.  ECF No. 211.  Lopez-Valdez has been in continuous federal custody since his arrest on February 28, 2018.  *Id.*  As of today's date, Lopez-Valdez has served approximately 40 months of that sentence.

Lopez-Valdez reported suffering from diabetes and neuropathy to the U.S. Probation Office at the time of the Presentence Interview.  ECF No. 153 (Pre-Sentence Report or "PSR") ¶ 67.  He described experiencing pain in his hands, arms, and joints.  *Id.*  While he was detained at Otay Mesa, the nurse practitioner assessed Lopez-Valdez with having type 2 diabetes mellititus ("DM") and hypertension.  ECF No. 206 at 2; Ex. A. at 4.  He later reported experiencing increased numbness in his toes, which the nurse practitioner noted as a probable sign of "progressing neuropathy related to DM."  ECF No. 206 at 2; Ex. A. at 10.  Lopez-Valdez describes neuropathy as a complication of diabetes that typically starts in the hands and feet.  ECF No. 206 at 2.[1]  Lopez-Valdez has no legal status in the United States and is therefore ineligible for furlough or home detention.  ECF No. 191 at 5.[2]

---

[1] Lopez-Valdez cites *Peripheral Neuropathy*, American Diabetes Ass'n, https://www.diabetes.org/diabetes/complications/neuropathy/peripheral-neuropathy (last visited June 12, 2020).

[2] District courts may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Accordingly, the Court takes judicial notice of the medical records submitted by the Defendant, ECF No. 206, Ex. A, in addition to the government statistics and reports published by the Centers for Disease Control and Prevention (CDC), the U.S. Immigration and Customs Enforcement (ICE), and San Diego County regarding the ongoing COVID-19 pandemic.  *See California River Watch v. City of Vacaville*,

## II. LEGAL STANDARD

Lopez-Valdez moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind

---

No. 2:17-cv-00524-KJM-KJN, 2017 WL 3840265, at *2 n.1 (E.D. Cal. Sept. 1, 2017) (matters of public record including "government documents available from reliable sources on the internet" are proper subjects of judicial notice).

decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### III. DISCUSSION

#### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. 18 U.S.C. § 3582(c)(1)(A). Because Lopez-Valdez was being detained at Otay Mesa, a private contract ICE facility run by CoreCivic, which is not a Bureau of Prisons ("BOP") facility, he did not have a BOP warden at the time the motion was filed from whom he could request administrative remedies. The Government does not oppose on the basis of exhaustion. *See* ECF Nos. 195, 206. The Court finds that under these

circumstances, the exhaustion requirement does not bar the Court from considering Lopez-Valdez's motion.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c). Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

(1) (A) Extraordinary and compelling reasons warrant the reduction;

. . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release. While the Court's decision is guided by this policy statement, a number of district courts have found that the amended Section 3583(c)(1)(A)(i) grants courts independent discretion to determine whether a defendant has provided extraordinary and compelling reasons for a reduction of their sentence. *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md.

2020), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Redd*, 444 F. Supp. 3d 717, 724–25 (E.D. Va. 2020).

### 1. Extraordinary and Compelling Reasons

Lopez-Valdez argues that his type II diabetes and hypertension qualify as "extraordinary and compelling" reasons justifying his release. ECF No. 191 at 10-11. He is prescribed Metformin for his diabetes and Lisinopril for his hypertension. ECF 206 at 2. As discussed above, a nurse practitioner at Otay Mesa identified that Defendant was likely experiencing progressing neuropathy related to his diabetic condition after he reported experiencing increased numbness in his toes. ECF No. 206, Ex. A. at 10.

It is well-established that individuals with diabetes are at increased risk of severe illness from COVID-19, and that hypertension may be a risk factor. *See People Who Are at Higher Risk for Severe Illness: People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (June 16, 2021). The Government does not dispute that Lopez-Valdez "presents a risk factor identified by the CDC as heightening the risk of severe injury or death were [he] to contract COVID-19" and agrees that Lopez-Valdez's chronic medical conditions "substantially diminishes [his ability] to provide self-care within the environment of a correctional facility." ECF No. 210 at 2.

The Court finds that the heightened risks that Lopez-Valdez faces based on his medical conditions and recurring complications if he were to contract COVID-19 satisfy the extraordinary and compelling reasons standard. Accordingly, the remaining question is whether release would be consistent with the Section 3553(a) sentencing factors and public safety.

\ \ \

\ \ \

### 2. Sentencing Factors and Public Safety

Before determining if release is warranted, the Court must also take into account public safety and the Section 3553(a) sentencing factors. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii); U.S.S.G. 1B1.13(2). These factors include, among other things, the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

In this case, Lopez-Valdez's long involvement in drug trafficking weighs strongly against release. As the Government notes, Lopez-Valdez has a criminal history of smuggling drugs and entering the United States illegally. In the instant offense, Lopez-Valdez knowingly and intentionally agreed with his co-conspirators to distribute cocaine onboard a vessel subject to the jurisdiction of the United States. *See* PSR ¶ 25. Lopez-Valdez was involved with the transportation of 1,575 kilograms of cocaine on this vessel northward for distribution into the United States. *Id*. At the time of his sentence, Lopez-Valdez had three criminal history points based on his nine prior arrests and eight prior removals. *Id.* ¶¶ 39-40. In addition to a misdemeanor illegal entry conviction, Lopez-Valdez has a prior felony conviction for illegal re-entry after deportation that involved numerous bales of marijuana. *Id.* ¶ 97. Further, the Lopez-Valdez had two previous arrests relating to bringing in or harboring certain aliens. *Id*. While such offenses, taken individually, may not indicate that release is unwarranted, Lopez-Valdez's history suggests that he has continued to turn to maritime drug smuggling and other forms of criminal conduct. Further, Lopez-Valdez has served just over half of his sentence, and thus a sentence reduction would not adequately reflect the severity of the offense.

The Court therefore concludes that Lopez-Valdez has not demonstrated that release would be consistent with the sentencing factors or the need to ensure public safety.

## IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion to Reduce Sentence.

**IT IS SO ORDERED.**

Dated:  June 16, 2021

Hon. Gonzalo P. Curiel
United States District Judge